BOLER, et al., Plaintiffs,

v.

SPACE GATEWAY SUPPORT
COMPANY LLC,
Defendant.

No. 6:02–CV–837–ORL18JGG.

United States District Court,
M.D. Florida,
Orlando Division.

May 29, 2003.

Mark E. Tietig, Esq., Tietig & Tietig, Merritt Island, FL, for Plaintiffs.

Beth S. Joseph, Morgan, Lewis & Bockius LLP, Miami, FL, James J. Kelley II, Esq., Kathy B. Houlihan, Laine S. Posel, Morgan, Lewis & Bockius LLP, Washington, DC, for Defendants.

## ORDER

ANTOON, District Judge.

This cause comes before the Court on Defendant's Motion for Attorney's Fees and Costs (Doc. No. 29) filed September 5, 2002, and Defendant's Motion for Attorney's Fees and Costs (Doc. No. 40) filed April 26, 2003.

The United States Magistrate Judge has submitted a report recommending that both motions be denied.

After review of the record in this matter, and noting that no objections were timely filed, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation. Therefore, it is **ORDERED** as follows:

1. That the Report and Recommendation filed May 29, 2003 (Doc. No. 43) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. That Defendant's Motion for Attorney's Fees and Costs (Doc. No. 29) is **DENIED.**

3. That Defendant's Motion for Attorney's Fees and Costs (Doc. No. 40) is **DENIED.**

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for hearing on March 5, 2003 on the following motions:

**MOTION: MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. No. 29)**

**FILED:** September 5, 2002

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

MOTION: MOTION FOR ATTOR-
NEY'S FEES AND
COSTS (Doc. No. 40)

FILED: April 28, 2003

THEREON it is RECOMMENDED that the motion be DENIED.

## I. ISSUES

Defendant Space Gateway Support Company, LLC ("SGS") seeks approximately $31,000 in attorney's fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent powers from non-settling plaintiffs Kenneth Palmer, John Smiley, and John Williams, as well as from their attorney, Mark E. Tietig ("Tietig"). SGS claims that Tietig and the plaintiffs filed and pursued this case, *Boler et al. v. Space Gateway*, 6:02–cv–837–28JGG, even though they knew that it was frivolous.[1] SGS further claims that Tietig and the plaintiffs have pursued this case solely to gain leverage in their then-pending case of *Goolsby et al. v. Space Gateway*, 6:01–cv–178–28JGG. SGS therefore claims entitlement to § 1927 sanctions from Tietig for vexatiously multiplying the litigation, and for the wilful abuse of the judicial process tantamount to bad faith. Plaintiffs respond that they have pursued this *Boler* case in good faith; that this case is meritorious; that they could not have asserted the *Boler* claims in the *Goolsby* action because they had not yet arisen; that they voluntarily dismissed the *Boler* complaint only to correct a pleading deficiency; and that the three non-settling plaintiffs may soon reassert their claims in a separate action.

## II. LAW

### A. Standard for Attorney's Fees under 28 U.S.C. § 1927

■ SGS seeks a severe sanction against Tietig alone, and the burden is high. Section 1927 of 28 U.S.C. provides as follows:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The word "vexatious" is not defined in the statute. In such circumstances, courts typically read statutory terms to convey their ordinary meaning. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (relying on definition of "prevailing party" in Black's Law Dictionary).

Black's Law Dictionary defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying." Black's Law Dictionary 1559 (7th ed.1999). It further defines "vexatious suit" to mean a "lawsuit instituted maliciously and without good cause." *Id.* Standard English-language dictionaries give the term similar meaning. *See, e.g.,* Webster's Third New International Dictionary 2548 (3d ed.1961) (defining "vexatious" to mean "lacking justification and intended to harass"); 19 Oxford English

---

1. The complaint, originally filed in Brevard County Circuit Court and then removed, alleges that SGS intentionally inflicted emotional distress on plaintiffs (Count 1) by retaliating against them for filing EEOC and FCHR complaints, and also retaliated against plaintiffs in violation of 42 U.S.C. § 1981 (Count 3). The complaint also alleges that SGS fraudulently misrepresented its intentions by inducing plaintiffs to pursue job opportunities that did not exist because of the ongoing retaliation against them (Count 2). Docket No. 2.

Dictionary 596 (2d ed.1989) (defining "vexatious" for legal purposes as "[i]nstituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant").

There is little case law in the United States Court of Appeals for the Eleventh Circuit articulating the standard applicable to an award of attorney's fees under § 1927. *Peterson v. BMI Refractories,* 124 F.3d 1386, 1395 (11th Cir.1997). Moreover, decisions from other circuits are not in agreement on the governing principles. Some circuits have held that subjective bad faith is required for an award under § 1927. *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986); *Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir. 1991). Other circuits have held that it is not. *See Wilson–Simmons v. Lake County Sheriff's Dep't,* 207 F.3d 818, 824 (6th Cir.2000); *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1342 (10th Cir.1998).

While the Eleventh Circuit has not specifically required a finding of subjective bad faith, it has stated that § 1927 allows district courts to assess attorney's fees against counsel and law firms who wilfully abuse the judicial process by "conduct *tantamount* to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991) (emphasis added); *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Additionally, the Eleventh Circuit has agreed with the Ninth Circuit that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998) (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir.1997)). The Eleventh Circuit has also warned that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to

discontinue their quest." *Avirgan,* 932 F.2d at 1582.

■ The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.,* 144 F.R.D. 410, 413 (M.D.Fla.1992). Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants.... It is concerned only with limiting the abuse of court processes." *Roadway Express,* 447 U.S. at 762, 100 S.Ct. 2455.

## B. The "Bad Faith" Standard

As previously discussed, courts in the Eleventh Circuit apply a standard for vexatious litigation that is tied to the standard for "bad faith"—*i.e.,* the wilful abuse of the judicial process by conduct tantamount to bad faith. Therefore the law establishing the "bad faith" standard should provide insight.

■ The American Rule prohibits fee shifting as a general rule. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). As an exception to the American Rule, however, the district court may award attorney's fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44—46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline,* 421 U.S. at 258—59, 95 S.Ct. 1612; *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir. 1998); *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir.1995); *Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1543 (11th Cir.1985); *Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1320 (11th Cir.2002). A federal court may exercise its *inherent power* to sanction bad faith misconduct

even if that conduct could be sanctioned under a statute or procedural rule. *See Chambers,* 501 U.S. at 49—51, 111 S.Ct. 2123. However, when bad faith conduct in the course of litigation could be adequately sanctioned under the rules, the court ordinarily should rely on the rules and not on its inherent power. *Id.*

 The bad faith exception to the American Rule is not limited to conduct at the moment of filing, but also incorporates bad faith acts preceding and during litigation. *See* 775 F.2d at 1543. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Barnes,* 158 F.3d at 1214. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order. *Barnes,* 158 F.3d at 1214. In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *See Rothenberg v. Security Management Co., Inc.,* 736 F.2d 1470, 1472 (11th Cir.1984).

 The invocation of the court's inherent power to sanction requires a finding of bad faith after the party is afforded a due process opportunity to be heard. *See Chambers,* 501 U.S. at 49, 111 S.Ct. 2123; *In re Mroz,* 65 F.3d 1567, 1575—76 (11th Cir.1995). Inherent powers must be exercised with restraint and discretion. *Barnes,* 158 F.3d at 1214. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. 501 U.S. at 44—45, 111 S.Ct. at 2132—33; *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 377—78 (Fed.Cir.1994) (recognizing that under certain circumstances a court can award expert witness fees as a sanction pursuant to its inherent power).

## C. Frivolousness under 42 U.S.C. § 1988

At the hearing, co-counsel for plaintiffs, Lisa Kulman Tietig, asked this Court to compare the high standard for conduct tantamount to bad faith under § 1927 to the lower standard for frivolousness under 28 U.S.C. § 1988. The law establishing the standard for frivolousness follows.

The United States Congress has determined that a court, in its discretion, may award reasonable attorney's fees, including expert fees, under Title VII and under § 1988 to a prevailing party as part of its costs. *See* 42 U.S.C. § 2000e–5 (k); 42 U.S.C. § 1988(b); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416, 421—22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Entitlement to attorney's fees by a prevailing party under Title VII is governed by the United States Code, which provides:

> In any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (*including expert fees* ) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5 (k) (emphasis supplied). Similarly, § 1988(b) provides in relevant part:

> In any action or proceeding to enforce ... [42 U.S.C. § 1983] ... the court, in its discretion, may allow the prevailing party ..., a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). Congress specifically drew the language of § 1988(b) from preexisting fee provisions like those in Title VII (*i.e.,* § 2000e–5(k)). Congress intended that the standards for awarding fees under § 1988 be the same as those under the fee provisions of the 1964 Civil

Rights Act. Thus, courts interpret § 2000 e–5(k) and § 1988(b) in tandem when addressing the propriety of awarding attorney fees to a prevailing civil rights party.

Neither § 1988(b) nor § 2000e–5 distinguish between prevailing plaintiffs and prevailing defendants. However, the Supreme Court has developed two distinct standards—one for prevailing civil rights plaintiffs and another for prevailing civil rights defendants. Relying on Congress's intent to cast civil rights plaintiffs in the role of private attorneys general, and on the fact that attorney's fee awards to prevailing plaintiffs are necessarily awarded against violators of federal law, the Supreme Court has held that a prevailing civil rights plaintiff should ordinarily recover his attorney's fees unless special circumstances would render such an award unjust. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416––18, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

 A far more rigorous standard applies to fee awards to prevailing defendants in civil rights cases. A prevailing defendant may recover its attorney's fees only where it establishes that the plaintiff's actions were frivolous, unreasonable, or without foundation, even though the action was not brought in subjective bad faith. *See Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Christiansburg Garment,* 434 U.S. at 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Cone Corp. v. Hillsborough County,* 157 F.R.D. 533, 540 (M.D.Fla.1994) (emphasis added). The United States Supreme Court has also made clear that a litigant's duty to avoid frivolous litigation is a continuing obligation. *Christiansburg,* 434 U.S. at 422, 98 S.Ct. 694; *Turner v. Sungard Business Systems, Inc.,* 91 F.3d 1418, 1423 (11th Cir.1996). Advocacy of a claim after it is clearly no longer tenable may subject the plaintiff to attorney's fees even though the complaint was not initially friv-

olous. *Christiansburg,* 434 U.S. at 422, 98 S.Ct. 694.

 The standard for awarding attorney's fees to a prevailing defendant is a stringent one. *See Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1558 (11th Cir.1995). A case is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation." *Sullivan,* 773 F.2d at 1188 (citing *Jones v. Texas Tech Univ.,* 656 F.2d 1137, 1145 (5th Cir.1981)). A court must not focus on whether the claim was ultimately successful in determining frivolity. *Id.* In applying the test, the court must remain cognizant of the Supreme Court's caution that:

> [i]n applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg,* 434 U.S. at 421––22, 98 S.Ct. 694.

 Typical "frivolity" cases include those where summary judgment is decided in favor of the defendant or on a

Fed.R.Civ.P. 41(b) motion for involuntary dismissal where the plaintiffs do not introduce any evidence in support of their claims. *See Sullivan,* 773 F.2d at 1189. A case is not frivolous where the plaintiffs provide sufficient evidence to support their claims. *Id.* Yet, where a plaintiff continues to litigate even after the claim was clearly groundless, frivolous, or unreasonable, an award of fees may be proper. *See Turner v. Sungard Business Systems, Inc.,* 91 F.3d 1418, 1423 (11th Cir.1996).

While the inquiry is not subject to immutable rules, the Eleventh Circuit looks to three factors in determining whether a prevailing defendant is entitled to an award of attorney's fees: 1.) whether plaintiffs established a prima facie case; 2.) whether defendant offered to settle; and 3.) whether the action was decided on dispositive motions rather than at a trial on the merits. *See Head v. Medford,* 62 F.3d 351, 356 (11th Cir.1995); *Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir.1985); *Cone,* 157 F.R.D. at 541.

In applying these three factors, the Court must remain cognizant of the definition of frivolity—whether an argument is "so lacking in arguable merit as to be groundless or without foundation." *See Sullivan,* 773 F.2d at 1188. Courts applying the three factors have been reluctant to award fees unless the plaintiffs refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest. *See Head,* 62 F.3d at 356; *Cone,* 157 F.R.D. at 540. A defendant is not entitled to an award of attorney's fees and costs simply because it prevailed in summary judgment. *See, e.g., Head,* 62 F.3d at 356 ("merely because plaintiff did not ultimately prevail on her federal claims does not determine that her claims were groundless"). Rigid application of these factors would lead to a result that Congress did not intend—that any defendant who prevailed on a dispositive motion would be entitled to fees.

### D. Rule 11

At the hearing, counsel for defendant SGS observed that plaintiffs had voluntarily dismissed their complaint [Docket Nos. 67, 68] in this case only after SGS had served (but not filed) a motion for sanctions under Fed.R.Civ.P. 11. The law relating to Rule 11 follows.

An attorney who presents to the Court any paper, motion, or pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that there is "evidentiary support" for any allegations or factual contentions. Fed.R.Civ.P. 11(b)(3). Rule 11 sanctions are proper:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996) (*quoting Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995)).

In deciding the propriety of Rule 11 sanctions, a Court first determines whether the party's claims are objectively frivolous and then, if so, whether the signatory to the pleading should have been aware that they were frivolous—whether he would have been aware of the frivolousness if he had made a reasonable inquiry. *Worldwide Primates,* 87 F.3d at 1254; *Jones,* 49 F.3d at 695. Relevant factors into the reasonableness of the inquiry in-

clude: how much time was available for investigation; whether reliance upon representations of the client was necessary; whether the paper was based upon a plausible view of the law; and the extent to which factual development requires discovery. *Jones,* 49 F.3d at 695. Because Rule 11 is only violated if the paper is "signed in violation of this rule," the Court's inquiry focuses only on the merits of the pleading from facts known or available to the attorney at the time of filing. *Jones,* 49 F.3d at 694—5 (*citing Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1507, 1508 (11th Cir. 1993)).

Rule 11 (1)(A) contains a "safe harbor" provision which states that:

> a motion for sanctions under this rule ... shall be served as provided in Rule 5, but *shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.*

Fed.R.Civ.P. 11(1)(A) (emphasis added).

**2.** On March 24, 2003, plaintiffs filed a Notice of Settlement in this case as to seven plaintiffs. Docket No. 38. The notice stated that plaintiffs Boler, Goolsby, McGahee, McGrier, Singleton, Weaver, and Wiley Williams reached a settlement as to all matters with SGS in the *Goolsby* and *Boler* cases, with each party to bear its own costs and fees. Therefore, the motion for attorney's fees at Docket No. 29 seeks attorney's fees from the remaining plaintiffs, Palmer, Smiley, and John Williams as well as their attorneys. On April 23, 2003, plaintiffs filed an Amended Notice of Settlement. Docket No. 39. The Amended Notice of Settlement advised that SGS had reached a settlement with the seven plaintiffs, and also "irrevocably and unconditionally released ... the aforementioned plaintiffs **and their legal representatives** of and from any and all suits, charges, claims ..." Docket No. 39 (emphasis in original).

On April 28, 2003, SGS filed a second motion for attorney's fees and costs pursuant to 28 U.S.C. § 1927 [Docket No. 40] briefly restating its previous arguments, and adding that the settlement agreement should not af-

## III. APPLICATION TO BOLER

### A. THE FACTS

Prior to settlement, there were ten plaintiffs in this case: Theophlis Goolsby; Kenneth Boler; Vernon McGahee; Ronald McGrier; Kenneth Palmer; Anthony Singleton; John Smiley; Wiley Williams; Willie Weaver; and John Williams. Three plaintiffs remain.[2] Plaintiffs are African–American men who allege that Space Gateway Support Company, LLC ("SGS") retaliated against them for filing race discrimination complaints by failing to hire them for security positions (*Boler* Complaint, Count 2). The plaintiffs also claim intentional infliction of emotional distress and fraudulent misrepresentation (*Boler* Complaint, Count 1). Docket No. 3.

At the time that plaintiffs filed the *Boler* complaint in February 2001, the same ten plaintiffs were pursuing another complaint in this Court (*Goolsby v. Space Gateway*) in which they alleged racial discrimination in hiring. The *Goolsby* case was mediated on June 3, 2002, which resulted in an impasse.[3] On June 4, 2002, the day follow-

fect the motion for attorney's fees and costs because virtually the same hours and fees would have been accrued even if there had only been three plaintiffs. The motion asks this Court to disregard plaintiffs' Amended Notice of Settlement. Docket No. 40. On April 28, 2003, plaintiffs filed a Motion to Strike Defendant's Response to Plaintiffs' Amended Notice of Settlement. Docket No. 41. The Motion to Strike has been denied because no such response was ever filed.

The parties dispute whether the settlement between SGS and seven plaintiffs includes an agreement to release plaintiffs' counsel from all liability in the entire case, including § 1927 sanctions in this case. This Court need not reach the issue because of the result recommended below.

**3.** At the March 5, 2003 hearing, counsel for SGS asserted that the Tietigs had made an unspecified threat during mediation with regard to the yet-unfiled *Boler* case. Plaintiffs' counsel objected on the grounds of confidentiality of settlement conferences, and the issue was not pursued.

ing the *Goolsby* mediation, plaintiffs filed the *Boler* case in state court. Although the *Boler* and *Goolsby* cases involve the same plaintiffs and defendant, and arise out of much the same set of operative facts, plaintiffs made no effort to amend the *Goolsby* complaint to include the claims alleged in *Boler*. Plaintiffs served SGS with the *Boler* complaint approximately one month after filing it in state court, and just days after SGS filed a motion for summary judgment in the *Goolsby* case.

On July 23, 2002, SGS removed the *Boler* case to this court. Docket Nos. 1—2. On August 13, 2002, this Court consolidated the *Goolsby* and *Boler* cases on SGS's motion. Docket No. 26. Plaintiffs contested both the removal and the consolidation, and filed a motion to decline supplemental jurisdiction of state law claims and to abate proceedings on the federal claim. *See* Docket No. 21. SGS accrued substantial attorney's fees and costs when they filed eleven sets of papers in the first two months of the case.

SGS served plaintiffs with a motion for sanctions under Rule 11, but never filed the motion. On August 26, 2002, the twenty-first day after serving the complaint on SGS—and the last day before SGS could file its Rule 11 motion under Rule 11's "safe harbor" period—plaintiffs filed a motion to voluntarily dismiss the *Boler* complaint. Case No. 6:01–cv–178–Orl–28JGG, Docket No. 67. The Court dismissed the *Boler* on August 30, 2002. Docket No. 28.

On September 5, 2002, SGS filed a motion seeking attorney's fees from plaintiffs individually, and from the plaintiffs' attorney, Mark E. Tietig, pursuant to 28 U.S.C. § 1927 and the Court's inherent powers. Docket No. 29. On October 24, 2002, Judge Antoon ordered that the motion for attorney's fees be set for hearing before the magistrate judge after the conclusion of the *Goolsby* case. Docket No. 32. On

December 20, 2002, the Clerk closed the *Goolsby* case after a nine-day trial that ended with a verdict for SGS. Case No. 6:01–cv–178–Orl–28JGG, Docket Nos. 132—133. On December 31, 2002, Judge Antoon again referred SGS's motion for attorney's fees to the magistrate judge. Docket No. 33. On March 5, 2003, this Court held a one-hour hearing on the matter.

## B. THE PARTIES' CONTENTIONS

### 1. Defendant SGS's Arguments

SGS argues that plaintiffs should be sanctioned under 28 U.S.C. § 1927 and the Court's inherent powers because they filed a lawsuit they knew to be frivolous solely for the purpose of gaining leverage in the *Goolsby* case. SGS claims that the plaintiffs' and their attorneys' conduct in the *Boler* case was tantamount to bad faith. SGS argues that plaintiffs were well aware that their claims were meritless and unsupportable by law or fact. SGS alleges that many of plaintiffs' allegations in the *Boler* complaint were contradicted by plaintiffs' own sworn testimony in the *Goolsby* case. SGS further alleges that plaintiffs' counsel knew from his direct and significant participation in the *Goolsby* case that the facts he alleged in the *Boler* case were false. In addition, SGS argues that plaintiffs' counsel knew that the emotional distress, retaliation, and fraud claims were all precluded by law under the facts claimed. Docket Nos. 29, 40.

### a. The Retaliation Claim

SGS argues that plaintiffs' sworn testimony is contrary to their allegations of retaliation in the *Goolsby* complaint. SGS argues that the plaintiffs' depositions demonstrate that SGS did not retaliate against them. Plaintiff *Goolsby* did not apply for any SGS job after he filed complaints for discrimination; plaintiff McGahce was offered a job and declined it before he filed a

discrimination complaint; plaintiff McGrier applied to SGS and was turned down before SGS could have been aware that he had filed a discrimination complaint; plaintiff Palmer applied for an SGS job and was turned down before he filed discrimination complaints; plaintiff Singleton did not apply for any job after he filed a discrimination complaint, and declined job overtures initiated by SGS; plaintiff Smiley resigned from SGS before he filed a complaint of race discrimination.[4] Docket No. 29 at 7—9. Based on these statements taken from the depositions of the plaintiffs in the *Goolsby* case, SGS argues that plaintiffs' claim for retaliation is frivolous.

### b. The Emotional Distress Claim

SGS argues that plaintiffs' claims for intentional infliction of emotional distress are also frivolous. SGS argues that the Goolsby record demonstrates that the plaintiffs could not sustain a valid claim for emotional distress. SGS states that the plaintiffs depositions show that, although they were angry, embarrassed, or humiliated, they did not suffer any serious or lingering emotional distress as a result of the failure to be hired by SGS, either in September 1998 (the time of the alleged race discrimination in the *Goolsby* case) or later. For example, plaintiff McGahee testified that the minimal emotional distress he suffered from SGS's decision not to hire him was resolved when Frito–Lay hired him. He testified that he did not have any physical pain or suffering, and that his emotional distress was limited to anger toward SGS management and some humiliation at not being selected for a job. Docket No. 29 at 10 (citing plaintiff's deposition).

Plaintiff Smiley described his emotional distress as embarrassment and humiliation that decreased over time. Plaintiff Singleton testified that he suffered "a great deal of mental anguish, humiliation, embarrassment, and a sense of helplessness" as a result of SGS's "discrimination," but not retaliation. Plaintiff Palmer described his emotional distress as "embarrassment and a loss of self-esteem as a result of SGS's discriminatory actions." Palmer attributed his humiliation to the initial SGS decision not to hire him in September of 1998.[5] SGS argues that the allegations of severe emotional distress in the complaint are false in light of plaintiffs' depositions stating otherwise. Docket No. 29 at 11—12 (citing plaintiff's deposition).

### c. The Fraudulent Misrepresentation Claim

SGS argues that the claim for fraudulent misrepresentation did not comply with the specificity requirements of Federal Rule of Civil Procedure 9(b) which states that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). SGS argues that "the only reasonable inference that can be drawn from this vacuum of detail is that counsel and plaintiffs either (1) knew that they could not make sufficient factual allegations to support the claim or (2) had not made an inquiry into the facts or law reasonable under the circumstances." Docket No. 29 at 19.

### 2. Plaintiffs Arguments

Plaintiffs argue that they brought the *Boler* case in good faith, and that the

---

**4.** Plaintiff Smiley previously filed a discrimination complaint against SGS alleging Vietnam Era Veteran discrimination, but not race discrimination. SGS argues that even if Smiley's resignation was construed as a termination, he would still fail to state a § 1981

claim because he did not file a claim for *race* discrimination until after his resignation.

**5.** SGS outlines several more plaintiffs with similar experiences.

claims alleged are meritorious. At the hearing, Ms. Tietig admitted that the complaint, as filed, was in need of amendment to further specify the facts and allegations. Instead, plaintiffs voluntarily dismissed the case without prejudice. Ms. Tietig argued adamantly that she believed and still believes the claims to be viable. According to Plaintiffs, SGS has not presented sufficient legal and evidentiary grounds for the imposition of sanctions against the plaintiffs or their attorney, and have fallen far short of showing conduct tantamount to bad faith. Docket No. 30.

### a. Retaliation Claim

Plaintiffs contend that their retaliation claims were not frivolous. Plaintiffs argue that they had active applications on file with SGS, and were eligible for consideration for security positions after they filed their complaints of discrimination. Plaintiffs claim that they were not considered for positions, even though they had active applications on file, in retaliation for filing discrimination complaints. Plaintiffs cite the deposition testimony of the SGS human resources manager, who stated that applications that were not selected for job offers went into a holding file. See Docket No. 31. Plaintiffs state that job openings became available after plaintiffs filed discrimination complaints, and while their applications were on file and active. Plaintiffs emphasize the significant hiring for security positions that took place after September 11, 2001. Plaintiffs state that SGS chose to hire candidates with criminal backgrounds off the street rather than hire plaintiffs because of their discrimination complaints. Docket No. 30 at 7. In response to SGS's portrayal of the facts regarding retaliation in their motion, plaintiffs argue, for example, that an offer SGS made to plaintiff Smiley was made in bad faith, and that his subsequent resignation was forced. Also, plaintiffs state that SGS never made any job offers to plaintiff Sin-

gleton after he filed his discrimination complaint. Rather, the "overtures" referred to by SGS were merely speculative discussions about possible future openings. Docket No. 30 (citing plaintiff's deposition).

### b. Emotional Distress Claim

Plaintiffs contend that their claims for emotional distress are not frivolous. Plaintiffs claim that they have suffered intense emotional distress and mental anguish resulting from being passed over in favor of inexperienced applicants. In response to SGS's argument that the *Goolsby* record evidence demonstrates that plaintiffs did not suffer extreme emotional distress, plaintiffs argue that the discovery in the *Goolsby* case focused only on the claims for discrimination and not on retaliation. Docket No. 30 at 2. Plaintiffs argue that the depositions and medical records do not include investigation into whether they suffered emotional distress as a result of retaliation. Counsel for plaintiffs argued at the hearing that plaintiffs' depositions did not include questions regarding their emotional distress as a result of SGS's continued retaliation. The questions in the depositions were specifically tailored to the discrimination claims, and some of the plaintiffs were not even asked about any other sources of emotional distress. Further discovery may have resulted in evidence to support plaintiffs claims that they suffered severe emotional distress as a result of being passed over for hiring in favor of less qualified candidates, some with criminal backgrounds.

### c. Fraudulent Misrepresentation Claim

Plaintiffs argue that SGS's criticisms of this claim are relevant to a motion to dismiss, but not to a § 1927 motion for sanctions. Plaintiffs contend that they were induced to spend their time and money in pursuit of employment, but that their

efforts were futile because of the SGS's retaliatory conduct.

## C. ANALYSIS

■ The standard for bad faith—and for conduct tantamount to bad faith under § 1927—is higher than the standard for mere frivolousness. In assessing whether Tietig's conduct in pursuing the *Boler* case is tantamount to bad faith, this Court focuses primarily on Tietig's conduct and motives, and not on the validity of this case. This Court exercises its inherent powers with restraint and discretion.

On the present record, this Court cannot say that Tietig has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. This Court cannot find that Tietig brought the *Boler* case for the purpose of harassing SGS, or to delay or disrupt the litigation. Although Tietig may have brought this *Boler* case without good cause, the Court cannot find that he did so maliciously or in subjective bad faith. Moreover, SGS has not shown that Tietig wilfully abused the judicial process, or that he knowingly or recklessly filed a frivolous claim. Where it became apparent that discoverable evidence did not bear out his claims, Tietig and the plaintiffs discontinued their quest before the expiration of the Rule 11 "safe harbor" period. Although Tietig has likely pursued the *Boler* case in part to add leverage to plaintiffs' claims in *Goolsby,* the Court cannot conclude that he has multiplied the proceedings unreasonably and vexatiously within the meaning of 28 U.S.C. § 1927.

SGS's motion for attorney's fees is primarily based on its argument that the *Boler* case was frivolous. If SGS were a prevailing defendant in a civil rights case, it may recover its attorney's fees only if it establishes that the plaintiffs' actions were frivolous, unreasonable, or without foundation, although SGS would not need to prove that the action was brought in sub-jective bad faith. This Court need not decide whether this case (*Boler*) is frivolous—that is, so lacking in arguable merit as to be groundless or without foundation. This Court is hesitant to find a case frivolous and to award fees against the plaintiffs unless plaintiffs refuse to acknowledge clear precedent, or assert a claim which is based knowingly on a nonexistent interest. This Court also is hesitant to find a newly-filed case frivolous because decisive facts may not emerge until discovery. This is true even where discovery has been concluded on similar claims in a related case. In any event, SGS has not shown that the pursuit of this case (*Boler*), however weak, was a wilful abuse of the judicial process tantamount to bad faith.

SGS seeks recovery of attorney's fees and costs against Tietig under § 1927, and against Tietig and the three non-settling plaintiffs under this Court's inherent power. SGS's present claim for sanctions is an attempt to salvage SGS's claim for Rule 11 sanctions—a claim which SGS cannot pursue because plaintiffs withdrew the *Boler* complaint within the twenty-one day "safe harbor" provision as intended and allowed by Fed.R.Civ.P. 11(c)(1)(A). As noted in the Advisory Committee Notes to Rule 11's 1993 Amendments:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motions unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.

This Court ordinarily relies on the Federal Rules of Civil Procedure—such as Rule 11—to sanction bad faith conduct in the course of litigation. SGS has not shown adequate reason for the court to now resort to its inherent power. SGS has not

established that it is entitled to sanctions against Tietig for vexatiously multiplying the litigation within the meaning of 28 U.S.C. § 1927, or against Tietig and the remaining plaintiffs under this Court's inherent power.

## IV. CONCLUSION

Accordingly, it is **RECOMMENDED** that defendant's motion for attorney's fees and costs (Docket No. 29) be **DENIED.** It is further

**RECOMMENDED** that defendant's motion for attorney's fees and costs (Docket No. 40) be **DENIED.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.