WORLDWIDE PRIMATES, INC.,
Plaintiff–Appellee,

Paul H. Bass, Respondent–Appellee,

v.

Shirley McGREAL, Defendant–Appellant.

No. 93–4094.

United States Court of Appeals,
Eleventh Circuit.

July 25, 1994.

Thomas R. Julin, Steel, Hector & Davis, P.A., Miami, FL, for appellant.

Edgar Miller, Kenneth L. Paretti, Coral Gables, FL, for appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

In this appeal, we reverse the district court's denial of a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

On August 3, 1990, Worldwide Primates, Inc. (Worldwide), a Florida corporation engaged in the commercial wildlife trade, sued Dr. Shirley McGreal in Florida state court for tortious interference with an advantageous business relationship. The single count complaint alleged that McGreal, an

animal rights activist and the chairperson of the International Primate Protection League, intentionally and unjustifiably damaged Worldwide's relationship with one of its clients, Delta Primate Center (Delta), by sending two letters critical of Worldwide to Delta's director, Dr. Peter Gerone. The first letter was dated January 15, 1989, and read as follows:

Dear Dr. Gerone:

The International Primate Protection League has just learned that the Delta Primate Center may be attempting to import no less than 150 sooty mangabeys for leprosy experiments, and that a Florida animal dealer (who even attempted to enter the gorilla trade some years ago) has been hired to obtain the animals.

This dealer's firm is Worldwide Primates. The firm has received very damning criticisms from the Department of Agriculture inspectors and has tried to undermine inspectors' authority by going over their heads.

I enclose some relevant documents.

Will you please provide IPPL with answers to the following questions:

1) Is Delta planning to import wild-caught sooty mangabeys?

2) Is the quoted number (150) exact and how was it chosen?

3) In what country will the animals be caught?

4) What capture methods will be used?

5) What price will be paid for these animals?

6) Why does Delta work with commercial wildlife traffickers?

These endangered primates would be far better off living in the wild than in your institution, wouldn't you agree if you were a *nonhuman* primate?

Yours sincerely,

/s/ Shirley McGreal

Chairwoman, IPPL

A copy of this letter was attached to the complaint. Significantly, however, the enclosures mentioned in the letter were not attached to the complaint. Those enclosures included a memorandum from the United States Department of Agriculture, which, consistent with McGreal's assertions, detailed "major deficiencies" in Worldwide's operation, including unsanitary, inadequate, and damaged animal cages, as well as other deficiencies "too numerous to mention." The memorandum also stated that "[s]o far, Matthew Block has avoided allegations of violation of the Animal Welfare Act by successfully involving seven levels of government in this agency, by invoking complaints, and allegations of everything from over-inspection to bigotry." McGreal's second letter was dated June 18, 1990, approximately 18 months after the first. This is its entire text:

Dear Dr. Gerone:

Should Delta patronize the company Worldwide Primates, we invite you to peruse this animal dealer's notice from the Centers for disease Control suspending his license to import primates.

Yours sincerely,

/s/ Shirley McGreal

Chairwoman, IPPL

This letter, like the first, was attached to the complaint without the document that was enclosed in the letter. That document, a letter from the United States Department of Health and Human Services, notified Worldwide's president, Matthew Block, that "your registration to import nonhuman primates into the United States is revoked for failure to implement appropriate isolation and quarantine procedures." The letter specified no fewer than 46 procedural violations.

McGreal, a South Carolina resident, promptly removed the case to federal court based on diversity jurisdiction, and filed a motion to dismiss the complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim. McGreal argued that her letters, being "nonviolent, truthful speech on matters of public concern" were protected by the First Amendment, and therefore could not provide a basis for tort liability. On November 1, 1990, Worldwide filed a memorandum opposing dismissal. The district court, without the benefit of McGreal's enclosures, denied the motion to dismiss on the ground that the letters' truthfulness could not be determined from the face of the complaint.

McGreal thereafter moved for summary judgment, arguing not only that the letters were protected speech, but also that they had caused no damage to Worldwide. When Worldwide failed to file a timely response to that motion, McGreal requested a default. Shortly thereafter, Worldwide moved to voluntarily dismiss the case under Fed.R.Civ.P. 41(a)(2), stating that its president, Matthew Block, had recently been indicted for violating federal laws relating to the sale of animals, and that it could not participate in discovery without potentially affecting the criminal matter. The district court granted Worldwide's motion, over McGreal's objection, and dismissed the lawsuit with prejudice.

Before the dismissal, McGreal had filed a motion for sanctions against Worldwide under Rule 11 of the Federal Rules of Civil Procedure, arguing that the lawsuit was legally and factually baseless and that it had been filed to harass McGreal for exercising her right to free speech. Noting that the dismissal did not foreclose the imposition of sanctions, *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 398, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990), the district judge referred the matter to a magistrate judge for a report and recommendation. Following oral argument, the magistrate judge recommended the motion be denied. The district judge, over McGreal's objections, accepted the recommendation and denied the motion for sanctions. This appeal challenges that ruling.

▮ The Rule 11 in place at the time of these proceedings provided that the district court shall impose sanctions when a party files a pleading that has no reasonable factual or legal basis or when the party files a pleading in bad faith for an improper purpose. *Pelletier v. Zweifel,* 921 F.2d 1465, 1514 (11th Cir.), cert. denied, ⸺ U.S. ⸺, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). The district court's standard for evaluating an alleged violation is reasonableness under the circumstances. *Didie v. Howes,* 988 F.2d 1097, 1104 (11th Cir.1993). We review the district court's ruling for abuse of discretion. *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460.

▮ Where, as here, a case is removed from state court, Rule 11 does not apply to pleadings filed before removal. *Griffen v. City of Oklahoma City,* 3 F.3d 336, 339 (10th Cir.1993). The rule, however, is applicable to papers filed in federal court after removal. Fed.R.Civ.P. 81(c). Thus, although Worldwide's complaint, which was filed in state court, cannot be the basis of a Rule 11 violation, any subsequent federal court filings, such as those in opposition to a motion to dismiss, are sanctionable if they resulted in the continuation of a baseless lawsuit.

In denying McGreal's motion the magistrate judge's report and recommendation recited the following:

> Although this Court is sympathetic to the position of Defendant, and agrees that there is a suggestion that Plaintiff may have been motivated by a desire to chill Defendant from expressing her views concerning Plaintiff's activities, there is no evidence of record which would support the imposition of Rule 11 sanctions. Defendant has been unable to establish that Plaintiff's Complaint had no reasonable legal basis, had no reasonable factual basis, or was filed for an improper purpose. Defendant has been unable to provide, and this court has been unable to find, any case which allowed the imposition of Rule 11 sanctions on similar facts.

▮ Contrary to this assessment, the record amply supports the imposition of sanctions because it reflects no basis, either factual or legal, for Worldwide's lawsuit. Worldwide's claim arises under Florida law. An integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126, 1127 (Fla.1985).

The evidence shows Worldwide knew from the beginning that the letters had not harmed its business relationship with Delta. In January 1992, McGreal deposed the recipient of her letters, Dr. Peter Gerone. When asked about his reaction to McGreal's first letter and the enclosed reports, Gerone stated unequivocally that he considered the in-

formation "ancient history", and that it did not change his perception of Worldwide as a "legitimate importe[r]". Gerone further testified that he advised Worldwide's president, Matthew Block, of his reaction. Upon receiving the letter, he faxed a copy of it to Block, along with a handwritten note reading "Matt, I have no intention of dignifying this letter with a response, Pete." Thereafter, Gerone spoke with Block on the telephone and reiterated his lack of concern about agency reports that were three or four years old.

Regarding the second letter, Gerone characterized his reaction as the same as it had been to the first. He stated that, in his view, the license revocation did not reflect negatively on Worldwide's "capability of handling nonhuman primates." He added that he believed such revocations were common in the industry because the Government was conducting inspections with "no guidelines or standards." Again, Gerone faxed a copy of the letter to Block. Although he could not recall any specific conversation with Block regarding the letter, he stated that he was "sure" there had been such a conversation, and that he probably told Block of having "heard about other facilities that had undergone the same kind of inspection."

■ The record shows that Delta continued to do business with Worldwide even after it received the letters. Worldwide argues that even without proof of actual losses, it could have recovered nominal damages. This is an incorrect assessment of Florida law, which, as previously mentioned, requires proof of damages as an essential element of a tortious interference claim. *Tamiami Trail Tours,* 463 So.2d at 1127. "Unsuccessful interference is simply not the kind of interference upon which a tort may be founded...." *American Medical Int'l, Inc. v. Scheller,* 462 So.2d 1, 9 (Fla.Dist.Ct.App.1984), *review denied,* 471 So.2d 44 (1985), *cert. denied,* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985).

In any event, it is important to note that throughout the course of this action, Worldwide has never alleged anything contained in McGreal's letters was false. The letters did nothing more than accurately describe the accompanying governmental reports. Worldwide could establish no cause of action for interference with its business relationship with Delta when all McGreal did was give Dr. Gerone truthful information. This common sense rule is set forth at § 772 of the Restatement (Second) of Torts:

*Advice as Proper or Improper Interference*

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not improperly interfere with the other's contractual relation, by giving the third person
>
> (a) truthful information, ....

The comment to § 772 provides further explanation:

> There is of course no liability for interference with a ... prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for ... refusing to deal with another. It is also true whether or not the information is requested.

This rule seems to reflect the law of Florida. *See Gutierrez v. Ocean Bank,* 594 So.2d 827, 828 (Fla.Dist.Ct.App.1992) (per curiam); *Rose v. Stroock & Stroock & Lavan,* 441 So.2d 172 (Fla.Dist.Ct.App.1983) (per curiam); *see also The Florida Bar Standard Jury Instructions Civil 85–1,* 475 So.2d 682, 691 (Fla.1985).

With this view of the case, it becomes unnecessary to consider whether McGreal's letters are protected by the First Amendment under *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), as McGreal argues, or whether the suit was prosecuted in bad faith for the purpose of punishing McGreal for exercising her First Amendment rights. *See Pelletier v. Zweifel,* 921 F.2d at 1514 (Rule 11 may be

violated "when the party files a pleading in bad faith for an improper purpose.").

The undisputed facts were apparent to Worldwide when it opposed McGreal's motion to dismiss and pursued this action in federal court. Worldwide could not reasonably have believed, as required by Rule 11, that its claim was well grounded in fact or law.

Because Worldwide pursued this claim in federal court when it knew, or should have known, that its claim was legally and factually baseless, this case is remanded to the district court for the determination and imposition of an appropriate sanction against Worldwide. Because there is some confusion regarding whether sanctions were initially sought against counsel, and what effect, if any, that may have had on the district court's denial of sanctions against counsel, and whether sanctions against counsel would be appropriate in any event, the court should also consider whether a sanction should be imposed against Worldwide's counsel.

REVERSED and REMANDED.