United States Court of Appeals,

Eleventh Circuit.

No. 95-4607.

WORLDWIDE PRIMATES, INC., Plaintiff,

Paul Bass, Esq., Plaintiff-Appellant,

v.

Shirley McGREAL, Defendant-Appellee.

July 16, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 90-2056-CIV-KLR), Kenneth L. Ryskamp, Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BARKETT, Circuit Judge.

Attorney Paul Bass appeals the imposition of sanctions against him in the amount of $25,000 in favor of Shirley McGreal under Rule 11, Federal Rules of Civil Procedure (1993).[1] We affirm.

The full factual and procedural background of this case is set forth in *Worldwide Primates, Inc. v. McGreal,* 26 F.3d 1089 (11th Cir.1994) ("*Worldwide I* "). Briefly, however, McGreal is an animal rights activist, and Worldwide Primates, Inc., is a Florida corporation engaged in the commercial wildlife trade. McGreal sent two letters to Delta Primate Center, a client of Worldwide. The first letter stated, in part, that Worldwide had "received very damning criticisms from the Department of Agriculture inspectors

---

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]We use Rule 11 as it read at the time the motion for Rule 11 sanctions first was denied. It has since been amended.

and has tried to undermine inspectors' authority by going over their heads. I enclose some relevant documents." The enclosures, in essence, verified the truth of McGreal's statements. They included a memorandum from the United States Department of Agriculture, which, consistent with McGreal's assertions, detailed "major deficiencies" in Worldwide's operation, including unsanitary, inadequate, and damaged animal cages, as well as other deficiencies "too numerous to mention." The memorandum stated that "[s]o far, [Worldwide President] Matthew Block has avoided allegations of violation of the Animal Welfare Act by successfully involving seven layers of government in this agency, by invoking complaints, and allegations of everything from over-inspection to bigotry."

The second letter sent by McGreal stated that "[s]hould Delta patronize the company Worldwide Primates, we invite you to peruse this animal dealer's notice from the Centers for Disease Control suspending his license to import primates." Enclosed was a letter from the United States Department of Health and Human Services, notifying Block that "your registration to import nonhuman primates into the United States is revoked for failure to implement appropriate isolation and quarantine procedures." This letter specified no fewer than 46 procedural violations.

Block took the letters to attorney Bass to discuss the possibility of suing McGreal. Block and Bass had known each other for about 15 years, and Bass had represented Block on numerous occasions during that time. Block showed Bass the letters, but not the attachments referenced in the letters that verified the truth

of the statements contained in the letters.  Nor did Bass ask to see the attachments.  Bass testified that Block told him that, as a result of the letters, Worldwide "had to do two transactions with Delta Primates Center ... at no profit, and [had] cost [Block] money in tying up ... facilities and precluded [him] from making money in another endeavor."  But Bass did not make any inquiry of Block regarding these damages, such as the manner, nature or amount of money lost.

Thereafter, without doing any further investigation into the facts on which Worldwide's claim was predicated, Bass filed suit on behalf of Worldwide against McGreal in state court for tortious interference with a business relationship.  Copies of both letters were attached to the complaint, but the supporting enclosures were not.  McGreal removed the case to federal court, where it was subsequently dismissed.  The district court denied McGreal's motion for Rule 11 sanctions.  McGreal appealed, and we reversed the denial of sanctions against Worldwide and remanded with instructions also to consider whether sanctions would be appropriate against Bass.  On remand, the district court assessed $25,000 in sanctions against Worldwide and $25,000 against Bass. Bass now appeals.

An appellate court reviews all aspects of the district court's Rule 11 determination for an abuse of discretion.  *Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)).

We have previously stated that "Rule 11 stresses the need for

some prefiling inquiry." *Mike Ousley Productions, Inc. v. WJBF-TV,* 952 F.2d 380, 382 (11th Cir.1992). Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Jones,* 49 F.3d at 694. Imposition of sanctions on the attorney rather than, or in addition to, the client is sometimes proper "since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel." *See id.*

In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. *Id.* If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. *Id.* The reasonableness of the inquiry "may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the [violative document]; ... or whether he depended on forwarding counsel or another member of the bar." *Ousley Productions,* 952 F.2d at 382 (quoting Advisory Committee Note to Rule 11, as amended in 1983).

We need not dwell on the first issue of whether Worldwide's

claim was objectively frivolous because we so found in *Worldwide I. See* 26 F.3d at 1092. Likewise, we find that Bass failed to make a reasonable inquiry into the facts on which Worldwide's claim was predicated. Had Bass made such a reasonable inquiry, he would have discovered that Worldwide's tortious interference claim was frivolous.

We stated in *Worldwide I* that a necessary element of a claim for tortious interference with a business relationship under Florida law requires proof of damage to the plaintiff as a result of the breach of the relationship. *Id.* at 1091. Yet Bass never conducted any independent inquiry into whether Worldwide had been damaged by McGreal's letters. Instead, Bass took as fact what his long-time client Block had simply asserted: Worldwide had been damaged by McGreal's letters because it had to "do two transactions at no profit." Indeed, Bass apparently failed to question Block about the damages, or obtain or examine any data to support the assertion or ascertain what amounts, if any, had been lost. At the time Bass filed the complaint, he apparently had no idea how he intended to prove the elements of his claim. Nor did he attempt to ascertain from Delta how the McGreal letters had impacted Delta's relationship with Worldwide. Had Bass contacted Delta's president, Dr. Peter Gerone, or any other official at Delta, he would have learned that Gerone was already on record as having told Block that McGreal's letters would have no effect on Delta's relationship with Worldwide, that Gerone considered the reports to be "ancient history," and that Gerone saw Worldwide as a legitimate importer with whom he intended to continue the same business relationship.

Thus, even the most minimal investigation would have alerted Bass to the lack of any damages resulting from McGreal's letters, and that any "claim" for tortious interference against McGreal therefore would be frivolous.

Bass argues, however, that he was under no obligation to conduct an independent investigation of the facts underlying Worldwide's claim before filing suit, and that he could rely on representations made to him by his long-time client, Block. We disagree, and hold that, under Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit. Bass does not argue that he lacked the time to investigate the facts, that he was forced to rely solely on Block for information, or that he had to depend on forwarding counsel or another attorney. *See Ousley Productions,* 952 F.2d at 383. Absent such extenuating circumstances, an attorney cannot simply rely on the conclusory representations of a client, even if the client is a long-time friend. The district court did not abuse its discretion in entering sanctions against Bass in this case. Accordingly, the district court's imposition of sanctions in the amount of $25,000 against Bass is AFFIRMED.