Charlie P. **FOOTMAN**, Jr., **Plaintiff**,

v.

Wang Tat **CHEUNG**, d/b/a: Chinese Food, **Defendant**.

No. 6:03–CV–1790ORL22JGG.

United States District Court, M.D. Florida, Orlando Division.

Aug. 30, 2004.

George Ollinger, Ollinger Law Firm, Melbourne, FL, for Plaintiff.

Lynne E. Wagner, The Anderson Firm, Grand Island, NE, for Defendants.

## ORDER

CONWAY, District Judge.

This cause is before the Court on the Report and Recommendation (Doc. No. 39) filed on July 20, 2004.

The United States Magistrate Judge has submitted a report recommending that pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 Plaintiff's counsel, George Ollinger, should be ordered to pay to defendant an award of attorney's fees and costs. The Magistrate Judge noted, that in settlement the parties have waived the right to recover attorneys's fees and costs, so the amount of the actual award would be zero.

After an independent *de novo* review of the record in this matter, including the objections filed by the Plaintiff, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation.

Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed July 20, 2004 (Doc. No. 39) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. The Court finds that attorney George Ollinger violated Rule 11, Fed. R.Civ.P. and 28 U.S.C. § 1927.

3. This matter is hereby **REFERRED** to The Florida Bar for investigation of the serious ethical violations found by the Magistrate Judge.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for hearing on June 25, 2004 to consider whether to impose sanctions on Plaintiff Charlie P. Footman, Jr. ["Footman"] or his counsel. The Court issued two orders (dated March 22, 2004 and June 8, 2004) directing Footman and his attorney to show cause why sanctions should not be imposed for certain conduct. This Report and Recommendation addresses issues raised in the June 8 order. For the reasons stated below, the Court should find that counsel for Footman has violated Rule 11, Fed.R.Civ.P. and 28 U.S.C. § 1927.

## I. BACKGROUND

Footman seeks damages and injunctive relief against Defendant Wang Tat Cheung d/b/a Chinese Food, a restaurant, on the grounds that the restaurant discriminated against him because of his disability. Docket No. 1. Specifically, Footman claims that the restaurant maintained a public accommodation with facilities that he could not access in a wheelchair in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; Fla. Stat. 760.01 *et seq.*, Florida Civil Rights Act ("FCRA")

On March 22, 2004, the Honorable Anne C. Conway determined that Footman's claim for damages and the FCRA claim were not available to him as a matter of law, and that he may be subject to sanctions under Rule 11, Fed.R.Civ.P.[1] Accord-

---

1. On February 3, 2004, defendant moved to dismiss the complaint, alleging, *inter alia,* that monetary damages were legally unavailable under the ADA, and that Footman's FCRA claim was defective because Footman failed to exhaust his administrative remedies prior to filing suit. Docket No. 6. In response, Footman withdrew his claims for damages and conceded that he failed to exhaust his administrative remedies prior to filing suit. Docket No. 10. In light of these concessions, and also noting other defects in the complaint, Judge Conway granted in part defendant's motion to dismiss and determined that the claim for damages and the FCRA claim were subject to Rule 11.

ingly, Judge Conway ordered Footman and his counsel to show cause why they should not be sanctioned for pursuing such claims in the complaint.[2]  Docket No. 12. On March 30, 2004, Footman amended his complaint.  Docket No. 14.

On April 29, 2004, before the Court ruled on the order to show cause, Footman moved to disqualify Judge Conway.  Docket No. 22.  Judge Conway denied the motion.  She determined that it was frivolous, meritless, procedurally defective, and that it suggested that Footman was attempting to "judge-shop."  Docket No. 29.  Accordingly, the Court entered a second order directing Footman to show cause why Footman and his counsel should not be sanctioned for filing a frivolous motion to disqualify pursuant to Rule 11; pursuant to 28 U.S.C. § 1927; and pursuant to the Court's inherent authority to impose sanctions.  Judge Conway also referred to the undersigned magistrate judge an inquiry into three specific issues (*See* Part III A, *infra*) concerning the conduct of Footman and his counsel.  On June 22, 2004, Defendant filed a Notice of Settlement, waiving any claim to attorney's fees.  Docket No. 32.  The Clerk closed this case on June 23, 2004.

## II.  *THE LAW*

### A.  Standard for Attorney's Fees under 28 U.S.C. § 1927

■ Section 1927 of 28 U.S.C. governs the unreasonable and vexatious multiplication of cases, and provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The statute does not define the word "vexatious." Absent a statutory definition, courts typically read statutory terms to convey their ordinary meaning.  *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (relying on definition of "prevailing party" in Black's Law Dictionary).  Black's Law Dictionary defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying." Black's Law Dictionary 1559 (7th ed.1999). It further defines "vexatious suit" to mean a "lawsuit instituted maliciously and without good cause."  *Id.*  Standard English-language dictionaries give the term similar meaning.  *See, e.g.*, Webster's Third New Int'l Dictionary 2548 (3d ed.1961) (defining "vexatious" to mean "lacking justification and intended to harass"); 19 Oxford English Dictionary 596 (2d ed.1989) (defining "vexatious" for legal purposes as "[i]nstituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant").

There is little case law in the United States Court of Appeals for the Eleventh Circuit articulating the standards applicable to an award of attorneys' fees under § 1927.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir.1997). Moreover, decisions from other circuits are not in agreement on the governing principles.  Some circuits have held that subjective bad faith is required for an award under § 1927.  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986); *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir.

---

**2.**  In response to the show cause order, counsel for Footman stated that he "made a mistake in the interpretation and application of the law"; that the "mistake was inadvertent and unintentional" because he "confused Title III ADA litigation with ADA employment litigation"; and that "[t]he mistake will not be made again."  Docket No. 13.

1991). Other circuits have held that it is not. *See Wilson–Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir.2000); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir.1998).

While the Eleventh Circuit has not specifically required a finding of subjective bad faith, it has stated that § 1927 allows district courts to assess attorney's fees against counsel and law firms who wilfully abuse the judicial process by "conduct *tantamount* to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991) (emphasis added); *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Additionally, the Eleventh Circuit has agreed with the Ninth Circuit that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998) (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997)). The Eleventh Circuit has also warned that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582.

■■■ The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D.Fla.1992). Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants . . . . [i]t is concerned only with limiting the abuse of court processes." *Roadway Express*, 447 U.S. at 762, 100 S.Ct. 2455.

## B.   The "Bad Faith" Standard

■■■ The American Rule prohibits fee shifting as a general rule. *See Alyeska*

*Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). As an exception to the American Rule, however, the district court may award attorneys' fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44—46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline*, 421 U.S. at 258—59, 95 S.Ct. 1612; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir.1985). A federal court may exercise its *inherent power* to sanction bad faith misconduct even if that conduct could be sanctioned under a statute or procedural rule. *See Chambers*, 501 U.S. at 49—51, 111 S.Ct. 2123. However, when bad faith conduct in the course of litigation could be adequately sanctioned under the rules, the court ordinarily should rely on the rules and not on its inherent power. *Id.*

■■■ The bad faith exception to the American Rule is not limited to conduct at the moment of filing, but also incorporates bad faith acts preceding and during litigation. *See* 775 F.2d at 1543. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Barnes*, 158 F.3d at 1214. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order. *Barnes*, 158 F.3d at 1214. In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *See Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir.1984).

The invocation of the court's inherent power to sanction requires a finding of bad faith after the party is afforded a due process opportunity to be heard. *See Chambers,* 501 U.S. at 49, 111 S.Ct. 2123; *In re Mroz,* 65 F.3d 1567, 1575—76 (11th Cir.1995). Inherent powers must be exercised with restraint and discretion. *Barnes,* 158 F.3d at 1214. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. 501 U.S. at 44—45, 111 S.Ct. at 2132—33. *See also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 377—78 (Fed.Cir.1994) (recognizing that under certain circumstances a court can award expert witness fees as a sanction pursuant to its inherent power).

### C. Rule 11, Federal Rules of Civil Procedure

Footman reached a settlement with defendant in this case only after this Court entered two separate orders to show cause why Footman and his counsel should not be sanctioned. The purpose of Rule 11 is to deter frivolous lawsuits, and not to deter novel legal arguments or cases of first impression. *Baker v. Alderman,* 158 F.3d 516, 523 (11th Cir.1998) (internal quotations and citations omitted). Although sanctions are warranted when the claimant exhibits a deliberate indifference to obvious facts, they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry to support a claim under existing law. *Id.*

An attorney who presents to the Court any paper, motion, or pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that there is "evidentiary support" for any allegations or factual contentions. Fed.R.Civ.P. 11(b)(3). Rule 11 sanctions are proper:

(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996) (*quoting Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995)).

In deciding the propriety of Rule 11 sanctions, a Court first determines whether the party's claims are objectively frivolous and then, if so, whether the signatory to the pleading should have been aware that they were frivolous—whether he would have been aware of the frivolousness if he had made a reasonable inquiry. *Worldwide Primates,* 87 F.3d at 1254; *Jones,* 49 F.3d at 695. Relevant factors into the reasonableness of the inquiry include: how much time was available for investigation; whether reliance upon representations of the client was necessary; whether the paper was based upon a plausible view of the law; and the extent to which factual development requires discovery. *Jones,* 49 F.3d at 695. Because Rule 11 is only violated if the paper is "signed in violation of this rule," the Court's inquiry focuses only on the merits of the pleading from facts known or available to the attorney at the time of filing. *Jones,* 49 F.3d at 694—5 (*citing Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1507, 1508 (11th Cir. 1993)).

Rule 11(1)(A) contains a "safe harbor" provision which states that:

a motion for sanctions under this rule ... shall be served as provided in Rule 5, but *shall not be filed with or presented to the court unless, within 21 days*

*after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.* Fed.R.Civ.P. 11(1)(A) (emphasis added).

Courts have a wide variety of possible sanctions to impose for violations of Rule 11, including "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other education programs; ordering a fine payable to the court; [or] referring the matter to disciplinary authorities." Fed.R.Civ.P. 11, Advisory Committee Notes, 1993 Amendments. Due process requires notice and an opportunity to respond if Rule 11 sanctions are imposed. *Baker*, 158 F.3d at 525. Although not mandated, the Eleventh Circuit "considers it prudent" for a district judge to hold a hearing before imposing sanctions. *Id.* at 525–526. In setting the amount of any monetary sanctions, a district court must consider the financial ability of the offending party. *Id.* at 529. If imposed on motion and warranted for effective deterrence, an order directing payment of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation may be imposed. *See* Rule 11(c)(2), Fed.R.Civ.P.

### D. Duty of Candor

Rule 11 reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making a representations to the court for an improper purpose. *See* Fed.R.Civ.P. 11, Advisory Committee Notes, 1993 Amendments. Every lawyer is an officer of the court and always has a duty of candor to the tribunal. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808–09 (11th Cir.2003)(citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). In addition,

[a]ll attorneys, as officers of the court, owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself.

*Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir.1993)(internal quotations and citations omitted).

The Florida Bar's Rules of Professional Conduct require a duty of candor toward the tribunal. Rule 4–3.3 provides "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal." Fla. Bar Rule 4–3.3(a)(1). In addition, pursuant to the statement of *"Ideals and Goals of Professionalism"* adopted by the Board of Governors of the Florida Bar, "A lawyer's word should be his or her bond. The lawyer should not knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Ideals and Goals of Professionalism*, No. 3.

### III. APPLICATION

#### A. Facts

The district court referred three specific issues for inquiry: 1.) whether Footman's counsel violated Rule 11 or § 1927 by alleging in the amended complaint that Footman has Multiple Sclerosis ("MS"); 2.) whether Footman's counsel has violated Rule 11 or § 1927 by alleging in the amended complaint that Footman actually entered the defendant's restroom and attempted to use the facilities; and 3.) whether Footman's court-ordered interrogatory answers were altered after Footman signed them, and if so, by whom and under what circumstances. Docket No. 29.

### 1. Whether Footman Had Multiple Sclerosis

In his amended complaint, Footman alleges that he is wheelchair-bound due to severe MS. Docket No. 14, ¶¶ 5, 10. However, in Footman's sworn interrogatory answers, he contends that he is confined to a wheelchair because of diabetes. Docket No. 17. Subsequently, Footman filed a Notice of Voluntarily Striking All Allegations of MS because that allegation was a "scrivener's error." Docket No. 31. In addition, in Footman's response to the Court's show cause order, counsel for Footman cites three explanations to reconcile the inconsistency: 1.) counsel's lack of experience with ADA cases; 2.) "scrivener's errors" resulting from the conversion of Microsoft Word documents into WordPerfect; and 3.) additional "scrivener's errors" and "computer glitches" which caused counsel to inadvertently interchange pleadings from a different case. Docket 30 at 1–2.

At the hearing, counsel testified that he "didn't see [confusion of the allegations] as a critical error because ... both diseases were similar" and because Footman would be classified as disabled under either disease under the ADA. Docket 37 at 7–9. Defense counsel conceded that defendant was not prejudiced by the error because he had assumed that, in any case, Footman was wheelchair-bound and disabled. Docket No. 37 at 10.

### 2. Whether Footman Actually Entered the Restroom

There is an additional conflict between the amended complaint and interrogatory answers concerning whether Footman actually entered the men's restroom at de-fendant's restaurant. In the amended complaint, Footman enumerated a list of barriers that he had encountered in the restroom. Specifically, Footman claimed that he had difficulty using the men's restroom toilet (could not lift himself onto the toilet) because it was too low and the grab bars were too small; that he could not turn his wheel chair around in the restroom; that he could not wash his hands afterwards because arthritis in this hands made him unable to turn the faucets; and that he suffered mental anguish because he needed assistance by another person to do these things. Docket No. 14 at 5—8, ¶¶ 11(d)—13. In contrast, Footman responded to this Court's interrogatories stating under oath that: "I could not get into the men's restroom because the men's restroom door was too small." Docket No. 17.

Footman did not appear at the hearing, call witnesses, or submit affidavits. Rather, Footman's counsel proffered his explanation for the contradictory responses. Counsel explained that, as he understood the facts from his client, Footman initially went to the restaurant alone, attempted to enter the restroom, and failed. According to counsel, Footman then went home and called Terry Hanshaw,[3] who drove Footman back to the restaurant and helped Footman enter the restroom. Docket No. 30, ¶ 6; Docket 37 at 14—15. Counsel further proffered that Footman had "a seventh grade education," and that he answered the interrogatory as best he could. Docket 37 at 19.

### 3. Counsel's Alteration of Footman's Interrogatory Answers

#### a. Version One [Handwritten / Sworn]

On March 11, 2004, the Court ordered Footman to file sworn responses to Court-

---

**3.** Counsel stated that Hanshaw "is an expert in ADA construction and ADA building regulations" and that "Footman knew [Hanshaw] from other ADA cases they had worked on." Docket No. 30, ¶ 6.

issued interrogatories. Docket No. 11. Counsel gave Footman a copy of the Court's standard type-written interrogatories, and Footman handwrote his answers on the form. *See* Docket No. 30, Exhibit No. 1. Interrogatory No. 3 asks when Footman visited the restaurant. Footman's handwritten answer was "10–1–03." On March 15, 2004, Footman swore that he had read the answers to interrogatories, that he knew the contents of the interrogatory answers, and that the answers were true and correct to the best of his knowledge and belief. Docket No. 30, Exhibit 1 at 2 [Version One]. Footman swore to the answers before Notary Public C.M. Morrison, who affixed his notary seal on March 15, 2004.[4]

b. Version Two [Handwritten with Changes]

Interrogatory 7 asked Footman to list each of the architectural barriers which he personally observed or experienced at the restaurant. Footman's original handwritten answer to Interrogatory 7 stated: "Ramp bad and could not get to restroom because of doors." Docket No. 30, Exhibit No. 1 [Version One]. Counsel for Footman added additional words in his own handwriting to revise Footman's own handwritten answer to read: "Ramp bad—*too small and dangerously close to road,* and could not get to restroom because of doors *too small.*" (words in bold italics added by counsel). Docket No. 30, Exhibit 1 at 2 [Version Two]. At the hearing, Counsel conceded that he may have changed Footman's answers after Footman had sworn to them. Docket No. 37 at 29.

c. Version Three [Typed with Changes / Unsworn]

Counsel later took Footman's handwritten answers to Interrogatories 1—7 of the

Court's Interrogatories [Version Two], and himself supplied revised, more detailed answers in type-written form. *See* Docket No. 35, Plaintiff's Exhibit No. 1 [Version Three]. However, Counsel mistyped the answer to Interrogatory No. 3 as "October 4, 2004." Docket No. 30, ¶ 4. Without ever submitting the revised typewritten answers to Footman to be re-sworn before a notary, counsel simply attached to Version Three a copy of Footman's old notarized signature with notarization from Version One. This made it appear that Footman had sworn to Version Three.

Footman attached Version Three to a "Notice of Service of Original Answered Interrogatories" and "furnished" it both to counsel for Defendant and to Judge Conway (presumably a courtesy copy). Docket No. 35, Plaintiff's Exhibit 1. The Clerk of Court stamped this document "RECEIVED" on March 17, 2004 at 10:52 AM.

d. Version Four [Typed with Handwritten Alteration / Unsworn]

As stated above, Footman originally handwrote his answer to Interrogatory No. 3 in Version One stating that he had visited the restaurant on "10–1–03." Counsel changed that answer in Version Three by mistakenly typing "October 4, 2004." Counsel next handwrote a correction to the error in typed Version Three— he used a pen to change 2004 to *"On or about* October 4, 2003." Docket No. 17 [Version Four]. Without ever submitting the revised typewritten answer to Footman to be re-sworn before a notary, counsel simply attached to Version Four the *original* page bearing Footman's notarized signature from Version One. See Docket No. 17. This made it appear that Footman had sworn to Version Four.

---

4. The original signature page and Notary Public stamp may be found at Docket No. 17 at 2 attached to Version Four (different answers) as discussed below.

Counsel then filed Version Four with the Court, which the Clerk stamped "FILED" on March 17, 2004 at 10:51 a.m. Docket No. 17. On April 16, 2004, Footman filed with the Court and served upon defendant a "Notice of Filing Court Interrogatories," attaching a "Notice of Service of Original Answered Interrogatories" which included Version Four.[5] Docket No. 17.

In response to the June 8 show cause order, counsel attempted to explain. According to counsel, he changed some of Footman's answers to be "more accurate and better, more informative to the opposing party." Docket 37 at 25. However, instead of having the revised answers re-sworn, counsel argued that the revised answers did not need to be re-sworn because they were based on Footman's sworn deposition testimony from another case. *Id.* When asked if he understood the implications of removing the notary page from the original handwritten version and attaching it to the subsequent versions, counsel repeatedly stated, "I didn't see anything wrong with it." *Id.* at 26. Only after admonishment did he concede "I'll never do it again." *Id.* at 28. Although counsel attached a sworn notary page to all four versions of Footman's answers, the sole sworn response to the Court's interrogatories was Version One, Footman's original handwritten response bearing a photocopy of the notarized signature.[6]

## B. Analysis

In seven months of litigation, plaintiff's counsel has demonstrated a consistent pattern of reckless, unprofessional, and unethical conduct, including: 1.) making legally unfounded claims in his initial complaint; 2.) filing an amended complaint containing unsupported and false allegations; 3.) filing a frivolous motion to disqualify the district judge; 4.) filing interrogatory answers that contradicted allegations in the amended complaint; and 5.) submitting multiple unsworn and un-notarized versions of answers to court interrogatories that purport to be sworn and notarized.

As a result, the Court has sacrificed precious judicial resources, including the entry of two show cause orders, the drafting of three orders totaling over 35 pages, and holding a hearing. Counsel has made numerous excuses to explain his misconduct, such as "scrivener's errors," "typographical errors," "computer glitches," mistakes in the "application and interpretation of the law," inexperience with ADA cases, and confusing clients. Although he has repeatedly declared that "the mistake will not be made again" and "I'll never do it again," he has repeatedly done so.

■ Rule 11 applies not only to pleadings, but also to "other papers" signed by counsel. Footman's amended complaint and Footman's interrogatory answers were blatantly inconsistent. Counsel's conduct

---

5. The Certificate of Service accompanying the "Notice of Service of Original Answered Interrogatories" stated that this Notice was served upon defendant "this 27th day of March 2004" and "April 15, 2004." At hearing, Counsel clarified that March 27 was a "scrivener's error" and that the proper date was March 15. Defense counsel confirmed that he had been served with version three on or about March 15, 2004 and version four on or about April 15, 2004.

6. Interestingly, on July 19, 2004, Plaintiff's counsel filed a *Fifth* Version of Footman's interrogatory responses. Docket No. 36. Version Five is a properly notarized version of Version Four. Although this version has no effect as the case is now closed, it is important to note that it is a further example of Counsel's carelessness. The Certificate of Service states that a copy of the document was furnished to defendant on "this 27th day of March 2004." However, counsel has already acknowledged that the March 27 date was a "scrivener's error".

has violated Rule 11. Specifically, the allegations in the amended complaint that Footman had MS and that Footman encountered a litany of difficulties in using the restroom demonstrate a deliberate indifference to obvious facts and lack evidentiary support. Although the allegation of MS and the contention that Footman encountered difficulties in the restroom may have been the result of confusion or carelessness, counsel never sought to amend the pleading after certifying to the Court that Footman had never entered the restroom. Counsel cannot certify that, to the best of his knowledge, formed after a reasonable inquiry, there was evidentiary support for the allegations in his pleadings and filings.

Counsel's conduct has also violated § 1927. This lawsuit is awash with frivolity. The conflicting allegations regarding Footman's disability and whether his disability prevented him from entering the defendant's facilities are central to the claims in this case. Counsel's demonstrated lack of candor cast doubt on the merits of Footman's entire case. Indeed, Footman bases his action on a frivolous assertion. According to Counsel, Footman was "embarrassed" when he was unable to enter the restroom, went home to telephone his ADA expert—with whom Footman had worked in prior ADA case filings—who supposedly drove him back to the restaurant and helped him enter the restroom. Through his unprofessional and unethical conduct, counsel has wilfully abused the judicial process, which amounts to conduct tantamount to bad faith. He has multiplied the proceedings unreasonably and vexatiously by recklessly raising frivolous allegations.

Finally, plaintiff's counsel also committed serious ethical violations each time he cannibalized a notarized signature page from a sworn document and attached it to an unsworn document. Counsel's conduct

has violated the Ideals and Goals of Professionalism and the Rules of Professional Conduct of the Florida Bar, and shows a disregard for his duty of candor. Most alarming is that counsel claims not to have realized that he had committed these errors.

This Court has a voluminous docket of ADA premises cases, some of which have been brought by attorneys with disingenuous motives. In *Rodriguez v. Investo, LLC,* 6:02–cv–916–Orl–31–KRS, the Honorable Gregory A. Presnell noted that in the past three years, over 579 ADA cases have been filed in the Middle District of Florida. Judge Presnell stated that "[t]he current ADA lawsuit binge is . . . driven by economics—that is, the economics of attorney's fees." *Id.,* Docket No. 79 at 7. Indeed, at the hearing in the present case, defense counsel expressed the following position:

> There is going on about our state and probably others . . . a plaintiff who . . . goes to a lot of restaurants . . . or other small businesses, and with an expert . . . they, [go] not . . . to get gas or to eat, but to discover ADA violations. And what happens . . . is that they find an attorney that will file these cases. . . . [Counsel] here has filed 40 cases as a sole practitioner . . . . And they don't, before they file these cases, go to the defendant . . . and say, 'hey, will you fix this.' They file the case first . . . . [a]nd then . . . an opportunity to settle arises . . . and the attorney, of course, gets his fee. And if you take attorneys that have 40, 50, and more cases each, flooding the courts with these things, not for the purpose of obtaining relief for their clients, but for the purpose of entering into settlements because the businesses they pick can't afford to defend the case, and then the attorney and the experts splitting the settlement fee. And God knows what these plaintiffs get . . . . I

have seen enough of this to know that there's a need ... for the courts not to just allow the system to be abused in this manner ... of using the courts for extortionative [sic] purposes .... [P]eople who just go to restaurants for the purpose of putting together a claim with never having any intention really of going back ... don't have standing .... So ... these cases, which really don't have ... any merit ... are filed time and time again ... people are paying money to settle them rather, because the cost of litigating them will be much more.... It burdens the courts unnecessarily and puts small businesses ... into a very impossible position.

Docket. 37 at 51—54.

## IV. *CONCLUSION*

The answers to the referred questions are as follows. First, Footman's counsel violated Rule 11 and § 1927 by alleging in the amended complaint that Footman has Multiple Sclerosis ("MS"). Second, Footman's counsel violated Rule 11 and § 1927 by alleging in the amended complaint that Footman actually entered the defendant's restroom and attempted to use the facilities when he did not. Third, Footman's court-ordered interrogatory answers were altered by counsel after Footman signed them under the circumstances described above.

It is therefore **RECOMMENDED** that, pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, counsel for Footman should be ordered to pay to defendant an award of attorney's fees and costs. In settlement, the parties in this case have waived the right to recover attorneys fees and costs, Docket No. 32, so the amount of the actual award in this case should be zero.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

July 20, 2004.