[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11589
Non-Argument Calendar
_____

D.C. Docket No. 1:01-cv-01859-PAS-UU


IRVING ROSNER,
ANDREW TIBOR,
IRENE TIBOR,
IRENE MERMELSTEIN,
ETHEL KLEIN, et al.,

Plaintiffs-Appellees,

SAMUEL J. DUBBIN,

Interested Party - Appellee,

ROBERT LANGERMANN,
Class Member Plaintiff,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 22, 2013)

Before TJOFLAT, CARNES, and PRYOR, Circuit Judges.

PER CURIAM:

Robert Langermann appeals the district court's order enjoining him from prosecuting a lawsuit in the United States District Court for the District of Nevada regarding his entitlement to damages from a class action settlement. Langermann contends that the district court lacked jurisdiction to issue that injunction and that the All Writs Act does not allow it to enjoin pending litigation under the circumstances of this case.

I.

This action arose as a result of the conduct of the United States government in the aftermath of World War II. At the end of the war, the United States came into possession of valuable personal property of Hungarian Jews that had been seized by the pro-Nazi Hungarian government. Instead of returning the property to its rightful owners, the United States misappropriated it for its own benefit.

In 2001, some Hungarian Jews who were persecuted by the Nazis during the Holocaust and the successors in interest of others brought a class action lawsuit

2

against the United States in the Southern District of Florida seeking compensation for the property that was never returned to them. That lawsuit led to a settlement agreement, and one of the class member's attempts to enforce the settlement agreement ultimately led to this appeal.

The class, which included Langermann, was certified for settlement purposes in 2001 under Federal Rule of Civil Procedure 23(b)(3). Under the settlement agreement, the United States government established a settlement fund of $25.5 million, approximately $21 million of which was to be used "for the direct provision of social services and humanitarian relief to eligible [v]ictims of Nazi [p]ersecution who are in need" as defined in the Plan of Allocation that the parties agreed to. The Plan of Allocation provides that eligible individuals in the United States may receive a maximum of $2,500 per year, unless an advisory committee specially approves more. The exact amount that each eligible person receives, however, is determined by the agencies that are charged with administering the program, with different agencies for different geographical areas.

The district court approved the settlement agreement and Plan of Allocation, and the class members received notice and an opportunity to opt out. The order approving the settlement also provided that the district court "shall retain exclusive and continuing jurisdiction over the Action, all Parties, the Claims Conference and Settlement Class Members, to interpret and enforce the terms, conditions and

3

obligations of this Final Order and Judgment[,] including all matters relating to the consummation, performance, and enforcement of the Settlement Agreement."

## II.

Langermann did not opt out of the class action and he received benefits from the settlement fund. The two agencies in charge of administering his benefits — Las Vegas Jewish Family Services and The Blue Card, Inc. — used financial need as a factor in determining the amount of money each eligible individual received each year. To verify financial need, the agencies required that eligible individuals provide financial documentation and permit agency employees to conduct a home visit.

Langermann objected to those procedures and also was unhappy that the agencies distributed less than the $2,500 annual maximum to him in some of the years in which he was eligible for a distribution. The lead attorney for the class attempted to resolve those issues with Langermann but was unsuccessful. In July 2009, Langermann filed a pro se motion in the Southern District of Florida to hold Las Vegas Jewish Family Services and The Blue Card, Inc. in contempt, contending that their actions violated the Plan of Allocation and his right to privacy. The district court denied that motion and concluded that the two agencies "have acted consistent with their responsibilities under the Amended Plan of Allocation." Langermann contacted lead class counsel and requested that he

4

appeal the district court's order, but believing the district court's decision was correct, counsel refused to file an appeal.

Three months later, Langermann wrote a letter to the district court judge who had denied the contempt motion asking her to reconsider her order. The court took no action on that letter and Langermann never followed up on it. Instead, fifteen months later, he filed a lawsuit in federal district court in Nevada seeking damages from the district court judge, lead class counsel, and the two agencies responsible for administering his benefits. Langermann alleged that those defendants conspired to deprive him of his right to benefits under the Hungarian Gold Train settlement and thereby violated his constitutional rights. Lead class counsel filed a motion in the Southern District of Florida on behalf of the other class members to enjoin Langermann from prosecuting that suit. The district court granted the motion and issued the injunction. This is Langermann's appeal.

### III.

Langermann first contends that the district court lacked jurisdiction to consider the class members' motion for an injunction. We review de novo questions of subject matter jurisdiction. Yunker v. Allianceone Receivables Mgmt., Inc., 701 F.3d 369, 372 n.2 (11th Cir. 2012). A district court retains jurisdiction to interpret and enforce a settlement agreement when "the terms of the settlement agreement [have] been made part of the order of dismissal — either by

5

separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381, 114 S.Ct. 1673, 1677 (1994). In the present case, the district court retained jurisdiction to interpret and enforce the class action settlement agreement by including a provision to that effect in its order approving the agreement. Because the district court retained that authority, its "traditional equitable powers also give it ongoing jurisdiction . . . to enforce the terms of the [settlement agreement] and to protect its jurisdiction over [the agreement] from collateral threats." Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 701 F.3d 669, 672 (11th Cir. 2012).

Langermann argues that the district court "abandoned" its jurisdiction by not taking any action on the letter he sent to the judge asking her to reconsider her order denying his contempt motion. We disagree. Langermann cites no authority that supports his argument, and we are unable to find any. Moreover, even if the district court somehow lost jurisdiction over Langermann's contempt motion, it still retained jurisdiction to interpret and enforce the settlement agreement — including the jurisdiction to protect the settlement agreement from collateral threats. See Kokkonen, 511 U.S. at 381, 114 S. Ct. at 1677; Upper Chattahoochee Riverkeeper Fund, 701 F.3d at 672. We therefore conclude that the district court

6

had jurisdiction to consider the class members' motion to enjoin Langermann's lawsuit in the federal district court in Nevada.

IV.

Langermann also contends that the All Writs Act does not allow the district court to enjoin pending litigation under the circumstances of this case. We review the district court's grant of an injunction under the All Writs Act for an abuse of discretion. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004). The All Writs Act provides that a federal district court "may issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It gives the district court the discretion to issue an injunction when there is "some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." Klay, 376 F.3d at 1100.

Langermann's complaint in the Nevada action alleged that he was not receiving all of the benefits he was entitled to under the Hungarian Gold Train settlement agreement. To decide that claim, the Nevada district court would need to determine what benefits Langermann was entitled to receive under the settlement agreement. That would require interpreting the settlement agreement, which would impinge on the continuing jurisdiction of the United States District Court for the Southern District of Florida to interpret and enforce that agreement.

7

It would also threaten the integrity of the Florida district court's final order approving the settlement and dismissing the case.  For those reasons, the All Writs Act empowers the district court to enjoin the pending Nevada lawsuit and the district court did not abuse its discretion by doing so.[1]  See Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1068 (11th Cir. 2001) ("[A] district court has the authority under the [All Writs] Act to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction.")

**AFFIRMED.**[2]

---

[1] Langermann also contends that the Anti-Injunction Act, 28 U.S.C. § 2283, bars the district court from enjoining his suit.  The Anti-Injunction Act applies only when a federal court enjoins litigation in state court.  See 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.") (emphasis added).  That limitation is beside the point here, because the district court enjoined Langermann from prosecuting his lawsuit in another federal court, not in a state court.

[2] Because we affirm the district court's grant of injunctive relief, we deny as moot Langermann's motion for a stay of the injunction pending the outcome of this appeal.

8