[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15136
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-22531-KMM


ROBERT LANGERMANN,

Plaintiff-Appellant,

versus

SAMUEL J. DUBBIN,
JONATHAN W. CUNEO,
STEVE W. BERMAN,
ILYA RUBINSTEIN,
"Elie",
DAVID C. WROBEL, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 3, 2015)

Before MARCUS, WILLIAM PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Robert Langermann brought this action alleging that the Defendants improperly denied him benefits he is due under a class action settlement. The district court dismissed his suit as barred by res judicata and denied his pending summary judgment motion as moot. The district court also imposed a filing injunction against Langermann as a Rule 11 sanction because this is his third attempt to litigate these same claims. He appeals, and we affirm.

I

In the waning months of World War II, United States Army forces in Austria seized a train laden with gold, jewelry, works of art and other valuable personal property—riches that had been confiscated from some 800,000 Jews by Hungary's Nazi-allied government. In the spring of 1945, the Hungarian government secreted the loot westward into Austria, away from the advancing Soviet Army, where it was intercepted. The United States government, which kept and housed the seized property, declared the treasure's rightful owners "unidentifiable." Despite pleas from organizations representing Hungarian Jewry, the United States refused to return or repatriate the property, which it deemed ownerless. Some was auctioned off, some was transferred to the Austrian postwar government, some was pilfered from U.S. storage, and some was requisitioned by high-ranking U.S. officers for

2

their own personal use.  The train, owing to its origin and its surfeit of gold, became known as the "Hungarian Gold Train."

More than fifty-five years later, a group of Hungarian Jews brought a putative class action against the United States in the District Court for the Southern District of Florida, alleging that the United States government's conduct related to the Gold Train violated, among other things, the Fifth Amendment's Takings Clause.

In 2005, a district court certified a class of nearly 50,000 people with ownership claims to property on the Gold Train and approved a $25.5 million settlement.  The settlement did not call for direct distribution of funds to class members.  Instead, it created a cy pres distribution system: the funds would "be used for the direct provision of social services and humanitarian relief to eligible Victims of Nazi Persecution who are in need."  To effect this goal, social service agencies would field requests for settlement funds from needy Holocaust survivors. The agencies would be responsible for verifying the requesters' eligibility and need for funds based on documentation or home visits.

## II

That brings us to our plaintiff, Robert Langermann.  He is a member of the certified plaintiff class: a Jew who was born in Hungary in 1935, survived the Holocaust, immigrated to the United States in 1958, became a citizen in 2002, and

3

lives in Nevada.  This action is Langermann's third attempt to convince a court that the social service agencies responsible for disbursing the funds violated the terms of the settlement.

Two agencies named as Defendants in this action—Jewish Family Service Agency of Las Vegas (JFSA) and The Blue Card, Inc. (TBCI)—were responsible for determining Langermann's eligibility for settlement funds.  Langermann received over $7,000 from 2006 through 2009.  But after a dispute over whether he was married, he refused to provide documentation to TBCI, to sign a release allowing TBCI to obtain information about him, or to permit a home visit to verify his continuing eligibility and need for settlement funds.  Because he refused, TBCI denied Langermann's requests for funds.  In response, he filed a motion for contempt in the class action.  He alleged that TBCI and JFSA should be held in contempt because by demanding he sign a release or permit a home visit, they violated both the terms of the class settlement and his constitutional rights.  The district court, which continued to oversee the class action, denied Langermann's motion.

Langermann then filed a new civil action in the United States District Court for the District of Nevada, making the same substantive allegations against TBCI, JFSA, and a host of other Defendants, including one of the class's lawyers and the District Judge presiding over the class action.  In response, class counsel filed a

4

motion in the class action (in the Southern District of Florida) seeking an injunction to prevent Langermann from collaterally attacking the class settlement in Nevada.  The motion was granted, and a Southern District of Florida District Judge enjoined Langermann from prosecuting the ancillary action in Nevada.  The District Judge observed that each of Langermann's Nevada claims were premised on the class action, its settlement, its allocation plan, and its final order, and that pursuing the Nevada action would lead to relitigation of rulings made in the class action, including the earlier order denying Langermann's motion for contempt. We affirmed the injunction on appeal.  Rosner v. United States, 517 F. App'x 762 (11th Cir. 2013) (per curiam).  The District Court for the District of Nevada dismissed Langermann's action with prejudice.  Langermann's appeal of that dismissal remains pending in the U.S. Court of Appeals for the Ninth Circuit.

## III

This appeal arises out of Langermann's third attempt to show that JFSA and TBCI violated the terms of the settlement.  He filed this action in the Southern District of Florida, again naming JFSA and TBCI as well as, this time, three of the class's lawyers (Samuel Dubbin, Jonathan Cuneo and Steve Berman), the executive director of TBCI (Ilya Rubinstein), and TBCI's attorney (David Wrobel).  The district court dismissed the complaint, finding that it was barred by res judicata, and denied as moot a pending motion for summary judgment filed by

5

Langermann. The district court also found that the complaint was frivolous, so it imposed a Rule 11 sanction enjoining Langermann from filing any further pleadings or motions against the Defendants without leave of Court. Langermann appeals each of those rulings.

IV

A. Res Judicata

Res judicata makes an earlier judgment "an absolute bar to [a] subsequent action or suit between the same parties." In re Atlanta Retail, Inc., 456 F.3d 1277, 1285 (11th Cir. 2006) (quotation omitted). It not only bars matters actually litigated in the earlier action; when it applies, res judicata also bars "every claim which might have been presented" in the earlier action. Id. (quotation omitted) (alteration adopted). Res judicata applies if four elements are met: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) between the same parties, or their privies; and (4) the causes of action involved in both cases are the same. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999). We review de novo whether a claim is barred by res judicata. Id. The district court held that all four elements of res judicata were present, and that the order denying contempt in the class action barred this suit. We agree.

6

### 1. Finality

Res judicata finality is closely related to finality for appealability under the final-order rule, 28 U.S.C. § 1291. First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc., 825 F.2d 1475, 1480 n.5 (11th Cir. 1987). An order is final under § 1291 if it ends the litigation on the merits and leaves nothing for the court to do but execute its judgment. Thomas v. Blue Cross & Blue Shield Ass'n, 594 F.3d 823, 829 (11th Cir. 2010). A postjudgment order is final for § 1291 if it disposes of all issues raised in the motion. Id. The order denying Langermann's contempt motion in the class action was a postjudgment order. The order, which held that the agencies had not violated the terms of the class settlement, disposed of all issues Langermann raised in his motion. The order was a final judgment for purposes of § 1291 and, by extension, res judicata.

### 2. Competent Jurisdiction

The District Court for the Southern District of Florida, which oversaw the class action, undoubtedly had jurisdiction to decide Langermann's earlier contempt motion. In its final order approving the class settlement, the district court expressly retained jurisdiction over the action to monitor the progress of the settlement and the allocation of settlement funds.

7

### 3. Privity

Privity describes a relationship between a party and a nonparty that is sufficiently close so that a judgment binds both. Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1472 (11th Cir 1986).[1] Langermann's contempt motion specifically sought a contempt order against JFSA and TBCI. Langermann argues that the parties named in this appeal were not all named in his contempt motion. That is true. But his contempt motion specifically accused Mr. Rubinstein, the director of TBCI, and Mr. Wrobel, an attorney for TBCI, of misconduct. Their relationship with TBCI is sufficiently close for them to be considered TBCI's privies. And Langermann certified in his contempt motion that he had unsuccessfully attempted to resolve his dispute with the three class attorneys named as Defendants here. For that reason, they would have been bound by any judgment arising from the contempt motion. This action and the earlier contempt motion thus involved the same parties or their privies.

### 4. Same Causes of Action

Cases involve the same causes of action if they arise out of the same nucleus of operative facts. Ragsdale, 193 F.3d at 1239. Res judicata bars not only those claims that were actually litigated in the prior suit, but any and all claims that could

---

[1] In the same vein, the Supreme Court has said that a judgment may bind a nonparty representative of a party, despite the general rule that judgments exert no binding force against nonparties. Taylor v. Sturgell, 553 U.S. 880, 892–95, 128 S. Ct. 2161, 2172–73 (2008).

8

have been raised arising out of the nucleus of operative facts.  Maldonado v. U.S.

Att'y Gen., 664 F.3d 1369, 1375–76 (11th Cir. 2011); see also In re Piper Aircraft

Corp., 244 F.3d 1289, 1296 (11th Cir. 2001).  Langermann's claims in this action

arise out of the same nucleus of operative facts as his claims in the contempt

motion.  Each of his claims stems from his contention that the agencies violated the

terms of the class settlement by demanding that he sign a release or permit a home

visit.

Langermann insists that the causes of action in this case are different

because he complains of a second demand for a release or a home visit in 2012,

which came after his contempt motion was denied.  But that alone does not make

the causes of action distinct.  The terms of the settlement caused TBCI to make the

2012 demand, just as they caused any earlier demand.  Both demands were part of

the same nucleus of operative facts, so the causes of action in both cases were the

same.  See Restatement (Second) of Judgment § 24, cmt. d (1982) ("When a

defendant is accused of successive but nearly simultaneous acts, or acts which

though occurring over a period of time were substantially of the same sort and

similarly motivated, fairness to the defendant as well as the public convenience

may require that they be dealt with in the same action."); see also Trustmark Ins.

Co. v. ESLU, Inc., 299 F.3d 1265, 1270 (11th Cir. 2002) (finding identity of

9

causes of action where "[b]oth [cases] involve breaches of the same contract, committed by the same party and involving the same general type of conduct").

\*    \*    \*

The order denying Langermann's contempt motion was (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) between the same parties or their privies as in this suit; and (4) involved the same causes of action as this suit.  The district court did not err in giving res judicata effect to the order denying contempt and barring this action.

B.  Rule 11 Sanctions

As a Rule 11 sanction, the district court imposed an injunction that barred Langermann from filing further pleadings against the Defendants unless he (1) notified the court of the order imposing the injunction; (2) gave the court an opportunity to pre-screen his proffered filing; and (3) obtained the court's leave to file the pleading based on a determination that the claims are neither frivolous nor barred by res judicata.

Rule 11 sanctions are warranted when a party files a pleading that (1) "has no reasonable factual basis"; (2) "is based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law"; or (3) "is filed in bad faith or for an improper purpose."  Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996) (quotation

10

omitted); see also Fed. R. Civ. P. 11(b), (c).  Federal courts have the inherent power and a constitutional obligation to protect their jurisdiction from conduct that interferes with their functions.  Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc).  Rule 11 sanctions should not go beyond what is necessary to deter the sanctioned conduct.  Fed. R. Civ. P. 11(c)(4).  "The only restriction this Circuit has placed upon injunctions designed to protect against abusive and vexatious litigation is that a litigant cannot be completely foreclosed from any access to the court."  Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993) (quotation omitted).  We review Rule 11 sanctions only for abuse of discretion.  McGreal, 87 F.3d at 1254.

The district court did not abuse its discretion in finding that the complaint violated Rule 11(b) and imposing sanctions.  The specific sanction imposed was neither an abuse of discretion nor inconsistent with our precedent limiting a district court's ability to prevent abusive litigation.

C. Denial of Pending Summary Judgment Motion as Moot

After dismissing Langermann's complaint, the district court denied all pending motions "as moot."  An issue is moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief."  Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009).  Federal courts cannot decide issues that have become moot; doing so is tantamount

11

to issuing an advisory opinion that is beyond our Article III authority.  Id.

(quotation omitted).  To decide moot issues "that do not matter to the disposition of

a case is to separate Lady Justice's scales from her sword.  That we will not do."

Id. (citing George E. Allen, The Law as a Way of Life 27 (1969) ("The scales of

justice without the sword is the impotence of law.")).  We review questions of

mootness de novo.  CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d

1257, 1268 (11th Cir. 2006).  Any issue in Langermann's summary judgment

motion no longer presented a controversy because the case had been decided

against him.  The district court did not err in denying the motion as moot.

V

Upon careful review of the record and consideration of the parties' briefs,

we affirm the district court's dismissal of Langermann's complaint as barred by res

judicata, its imposition of a filing injunction as a permissible Rule 11 sanction, and

its dismissal of his summary judgment motion as moot.

**AFFIRMED.**

12